IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RANDY J. RAMSDELL, ) | |
| ) | |
| Plaintiff, ) | 7:06 CV 5021 |
| ) | |
| v. ) | |
| ) | |
| ) | |
| MICHAEL J. ASTRUE,[1] Commissioner, ) | MEMORANDUM AND ORDER |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

This matter is before the undersigned by the consent of the parties pursuant to 28 U.S.C. §636(c). Plaintiff has filed an application for disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§3181 et seq. Following denial of benefits at the administrative level, on review by an administrative law judge ("ALJ"), and on reconsideration before the Appeals Council, Plaintiff has requested judicial review pursuant to 42 U.S.C. §405(g) and §1383(c)(3). He claims the Commissioner erred in finding he was not disabled within the definition of the term in the Social Security Act, and that the decision of the Commissioner is not supported by substantial evidence on the record as a whole.

Specifically, plaintiff claims the ALJ (1) gave undue weight to the opinion of a non-examining consulting physician and gave insufficient weight to the opinions of plaintiff's treating physicians; (2) rejected the opinions and evidence of his chiropractic treatment provider; (3) failed to consider psychiatric consultative opinion; (4) propounded inadequate hypothetical

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. He will be substituted as the party defendant in accordance with Fed. R. Civ. P. 25(d)(1).

questions to the vocational expert; and (5) utilized an inadequate credibility analysis of the plaintiff and his testimony.  Plaintiff claims these errors undermine the ALJ's decision and cause it not to be supported by substantial evidence.  Plaintiff seeks an award of benefits or alternatively, remand for further hearing.

## FACTS

Plaintiff applied for Title II and Title XVI disability benefits on June 1, 2004, alleging onset of disability on August 2, 2000.  His claims were denied first on August 17, 2004 and on reconsideration on August 31, 2004.  Plaintiff requested an administrative hearing, and one was held June 8, 2005 in North Platte, Nebraska.  Plaintiff was represented by counsel.  Plaintiff, his fiancee Sandy Schwab, and a vocational expert ("VE"), Gail Leonhardt, testified at the hearing.  Following the hearing, the ALJ requested a psychological assessment, and the records of that assessment were submitted to the ALJ.  On April 16, 2006 the ALJ rendered his decision finding that the plaintiff was not disabled at the time of the alleged onset date or at any time since then to the date of the decision.  T 12-19.[2]  Further review by the Appeal Council was denied on August 10, 2006, T 5-7, following submission of additional evidence.  T 8.  This action was timely filed on October 5, 2006.

Plaintiff was 44 years old at the time of his applications; 40 at the time of his alleged onset date.  He had a high school education and spoke English.  T. 18.  He alleged disability based on back and hip impairments and accompanying pain.  T 30, 57, 261.  Plaintiff's medical history includes injuries from a car accident in July, 1980, in which he sustained head injuries, unconsciousness, a severe burn on his left thigh requiring skin

---

[2] "T" refers to "Transcript," Filing 13.

grafts, and fractures to his right rib, spine, pelvis, and hip. During his hospitalizations of several weeks, he also contracted staph infections and a urinary tract infection.  Discharge Summary, 10-5-80, T 155-56.

On July 25, 2000 plaintiff was involved in another car accident in which he sustained a fracture of his left wrist, an "extremely comminuted" fracture of his left femur, and other injuries.  He underwent surgery and pinning of the two fractures. He was discharged from the hospital on August 3, 2000.  He followed up with physical therapy and exercises.  By February 9, 2001 plaintiff had improved to the point that he had "full[,] painless" range of motion in the hip, with some weakness.  T 220.  His orthopedist stated, "At this time, he is released for full work. He can do everything.  The patient is to continue doing the exercises he learned in physical therapy."  T 219.

   The ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.   The claimant has not engaged in substantial gainful activity at any time relevant to this decision.

3.   The claimant has the following severe impairments: Degenerative joint disease at L5-S1 with osteophytes, scoliosis, and radiating pain to the lower extremities bilaterally; pelvic nephrolithiasis (kidney stones); left lower extremity arthralgia, status post fracture with healed fixation; and dysthymic disorder with depressed mood and mixed anxiety.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   [T]he claimant has the residual functional capacity to perform a range of sedentary work.  He can lift or carry

>    10 pounds frequently and 20 pounds occasionally.  He can
>    stand or walk for 10 minutes at a time, for a total of 1
>    ½ hours in an 8-hour workday.  After standing or walking
>    for 10 minutes, the claimant would need to sit.  He
>    cannot balance, crawl, or kneel.  He can stoop and squat
>    less than occasionally.  Gripping and grasping with the
>    dominant, right upper extremity are limited to frequent.
>    He cannot repetitively push or pull with the lower
>    extremities bilaterally.  The claimant's ability to
>    appropriately interact with coworkers, supervisors and
>    the public is slightly limited.  His ability to respond
>    to work pressures is moderately limited.
>
>    [T]he claimant's medically determinable impairment could
>    reasonably be expected to produce the alleged symptoms,
>    but ... the claimant's statements concerning the
>    intensity, duration and limiting effects of these
>    symptoms are not entirely credible.
>
>    The objective medical evidence fails to fully support the
>    claimants allegations of disabling pain.
>
>    [H]is reported symptoms are out of proportion to other
>    substantial evidence.
>
> 6. The claimant is unable to perform any past relevant work.
>
> * * *
>
> 10. Considering the claimants, age, education, work
>     experience, and residual functional capacity, there are
>     jobs that exist in significant numbers in the national
>     economy that the claimant can perform.

T. 14-18.


## DISCUSSION

The Commissioner's decision must be affirmed if it is supported by substantial evidence on the record as a whole. "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Maresh v. Barnhart, 431 F.3d 1073, 1074 (8th Cir. 2005); Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2004) (quoting Young v. Apfel,

4

221 F.3d 1065, 1068 (8th Cir.2000)).  The court must consider the whole record, including evidence that supports as well as detracts from the Commissioner's decision; reversal is not warranted simply because some evidence may support the opposite conclusion.  Id.  Furthermore, "[Courts] defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005) citing Gregg v. Barnhart, 354 F. 3d 710, 714 (8th Cir. 2003).  A court may not reverse the Commissioner's decision merely upon a finding that it would have reached a contrary conclusion.  Id.  "If, after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [it] must affirm the denial of benefits."  Id. (citation and internal quotation marks omitted).  Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005).

   The Commissioner is required by regulation to perform a five-step process in evaluating claims of disability.  See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f)).[3]

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.  Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (citation omitted).  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.  The fourth step in this analysis requires the ALJ to determine a claimant's [Residual Functional Capacity]."  Id. at

---

[3] The reference is to Social Security Disability claims; the same test is used for SSI applicants.  20 CFR § 416.920.

5

> 590-91.  "A disability claimant has the burden to establish her RFC."  Id. at 591 (citing Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004)).  If the claimant establishes her inability to do past relevant work, then the burden of proof shifts to the Commissioner.  Id.  "The Commissioner must then prove, first that the claimant retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform."  Id. (citing Nevland v. Apfel, 204 F. 3d 853, 858 (8th Cir. 2000)).  Moreover, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."  Stormo, 377 F.3d at 806.

Goff v. Barnhart, 421 F. 3d at 789-790.  "While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." Draper v. Barnhart, 425 F. 3d 1127, 1130 (8th Cir. 2005); Reeder v. Apfel, 214 F. 3d 984, 988 (8th Cir. 2000); Boyd v. Sullivan, 960 F. 2d 733, 736 (8th Cir. 1992).

### 1.  Consulting Physician Opinions

Turning to the plaintiff's arguments, plaintiff first argues that the opinion of the consulting physician who did not examine the plaintiff does not constitute substantial evidence. Plaintiff's Brief, Filing 15 at 6-8.  Defendant, on the other hand, argues that the ALJ did not give controlling weight to the consulting physician's opinions, but did consider them, as required by applicable regulations.  Defendant's Brief, Filing 19 at 11.

20 CFR 404.1527(f)(2)(i) and 416.927(f)(2)(i) state that the ALJ "must consider findings of State agency medical and psychological consultants or other program physicians or

6

psychologists as opinion evidence...."  The ALJ did consider and gave "weight," but not "controlling weight," to the observations and conclusions of Dr. Grossman, the consulting physician.  T. 17, citing Exhibits 2F and 3F at T. 144-53.  Dr. Grossman's report concludes that the plaintiff can lift up to 20 lbs occasionally and 10 pounds frequently; can stand and/or walk about 6 hours in a normal 8-hour workday; and is "unlimited" in his ability to push or pull hand or foot controls.  T. 145.  The ALJ's findings, set out above, however, are considerably more limiting, especially in the plaintiff's ability to stand or walk.  Plaintiff's argument is not borne out in the record.

2.   Chiropractor's Opinion

Plaintiff's second argument is that the ALJ erred in rejecting his chiropractor's opinion that plaintiff was unable to work.  Plaintiff's Brief, Filing 15 at 8-10.  Defendant argues that a chiropractor's opinion is "other source" evidence, not "acceptable medical source" opinion.  Defendant's Brief, Filing 19 at 12, citing 20 CFR §§ 404.1513, 416.913 and Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005).

It is true, as defendant suggests, that Raney does recognize that the ALJ has discretion in how to consider "other source" medical evidence.  More important here, however, is the fact that Dr. Nielsen's opinion letter (Exhibit 10F at T. 251) is conclusory.  Rather than setting out his objective observations of the plaintiff's conditions, the letter opines that the plaintiff cannot stand or sit in a "normal" posture, cannot perform "normal work of any kind," and is "unable to perform any type of job that I can think of."  There are no foundational bases for these conclusions in the letter; that is, there is no definition of "normal," no objective findings regarding limitations in strength or range of motion or how such limitations might affect plaintiff's ability to

do "normal" work in any respect, and no indication that Dr. Nielsen is qualified to limit the jobs plaintiff might be able to perform. Even were Dr. Nielsen a treating "physician," the regulations clearly reserve the ultimate conclusion of disability to the Commissioner, applying the facts and the law.  20 CFR § 1527(e)(1). Dr. Nielsen's unsupported conclusions invade the province of the Commissioner.  SSR 96-5p.  While some findings are included in Dr. Nielsen's records, as cited by plaintiff (T. 235-236), they are not explained, and given the cryptic and sometimes incomprehensible nature of Dr. Nielsen's other records, I cannot say the ALJ was required to give them greater weight.

### 3. Mental Impairment

Plaintiff next argues that the ALJ's findings regarding plaintiff's mental impairments are not supported by substantial evidence, in that the hypothetical questions posed to the VE did not reflect the findings of the consulting psychologist combined with his physical impairments.  Plaintiff's Brief, Filing 15 at 10-12.  Defendant counters that the ALJ's decision does acknowledge and consider the psychologist's conclusions.  Defendant's Brief, Filing 19 at 15.

At the conclusion of the administrative hearing the ALJ directed plaintiff to be evaluated psychologically.  Plaintiff was tested by Dr. Lee Kimsey, Ph.D. on July 25, 2005, and his report on the plaintiff is found in the administrative record.  T. 252-259. Dr. Kimsey diagnosed Adjustment Disorder with Mixed Anxiety and Depressed Mood, and Personality Disorder, Not Otherwise Specified. His Global Assessment of plaintiff's Functioning (GAF) was 55.  T. 255.  He concluded that the plaintiff's ability to understand, remember, and carry out instructions was not affected by his impairment; his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting was not affected

by his impairment; and none of his capabilities was affected by his impairment.  Id. at 257-58.  Although plaintiff faults the hypothetical questions of the ALJ for failing to combine the physical and mental impairments, the record is otherwise.  The ALJ asked the following hypothetical question of the VE, after having asked hypotheticals combining plaintiff's physical impairments[4] and receiving the VE's response (T. 326) listing three jobs theoretically available that plaintiff could perform:

> Q:  Okay.  All right.  And then for the next hypothetical, this individual has the same limitations has hypothetical number two *with the following additional functional restrictions*.  The ability to interact appropriately with co-workers, and the public is slightly limited, and the ability to interact with supervisors is slightly limited.  The ability to respond to work pressures in a usual work setting is moderately limited.  Would this change any of your answers to hypothetical number two?
>
> A:  No.  Not at this level.

T. 327-28 (emphasis added).  This hypothetical question clearly asked the VE to combine both physical and mental impairments.  Moreover, it posed a situation which, in retrospect, turned out to be more favorable to the plaintiff than the later-received report from Dr. Kinzey, who concluded plaintiff suffered no impairment at all in these skills.  It is technically true, as plaintiff argues, that there is no evidence in the record substantiating the ALJ's conditions of "slight" and "moderate" impairments; however, utilizing the "reasonable mind" standard required by Maresh, it is difficult to imagine that a hypothetical question utilizing a "no

---

[4] Capable of sedentary work; can lift and carry up to 10 pounds frequently and 20 pounds occasionally; ability to walk or stand limited to 10 minutes, followed by a break to sit, with total standing or walking of no more than 1 ½ hours in an 8-hour day; cannot bend; cannot balance; cannot crawl, stoop, squat, or kneel; gripping and grasping movement with his dominant right hand limited to frequent; no restriction on sitting.  T. 324-26.

9

impairment" situation, as actually found by Dr. Kinzey later, would yield an answer more favorable to plaintiff.

### 4. Residual Functional Capacity

Plaintiff also argues in his reply brief that the RFC was not accurate, in that it states plaintiff can stand or walk for six hours in an 8-hour work day. T. 145. While this provides some evidence, the ALJ did not rely on that information, as shown by his hypothetical questions incorporating a restriction of one and one-half hours of standing or walking in an 8-hour work day. Thus, the RFC's finding on this point was not accepted by the ALJ.

### 5. Credibility

Plaintiff also argues that the ALJ erred in discounting his testimony that he would have to rest 45 minutes in a two-hour period of walking or standing to allow his pain to subside. T. 303-04. This limitation was not included in the ALJ's hypotheticals. Counsel, however, asked a hypothetical question incorporating this situation:

> Q: Mr. Leonhardt, if you would assume that the claimant, as a result of pain, has to rest for a period of up to 45 minutes would he be employable on a full-time basis in the national economy?
>
> A: No.

The ALJ's failure, if it was one, to incorporate in his hypothetical the 45-minute rest requirement was cured by plaintiff's counsel asking about it. Neither bit of testimony, though, is clear.

10

At one point it appears that Plaintiff testified that he could walk for up to a total of one hour and fifteen minutes in intermittent periods during an 8-hour day, with rest periods totaling 45 minutes; later, however, he appears to testify he could stand or walk for one hour and fifteen minutes without stopping, followed by one 45-minute rest period.  T. at 303-04.  The ALJ's hypothetical question to the VE implies that he took the plaintiff's testimony to be that he could stand or walk for intermittent periods totaling one and one-half hours in an 8-hour workday, with rest periods totaling 45 minutes.  The evidence, however, is ambiguous in that regard.  Plaintiff's counsel asked the VE to assume the plaintiff would have to rest for 45 minutes and to opine whether he would be then employable; the VE stated, "No."  T. 329.  However, again, it is not clear whether counsel was asking about several rest periods totaling 45 minutes or one, continuous period of 45 minutes.  In light of the ambiguity of the testimony, and the different opinion reached by the VE on the critical issue of employability, depending on the interpretation one puts on the testimony, I conclude that this evidence is not "substantial."

In his findings, the ALJ did give reasons for not crediting plaintiff's testimony entirely.  T. 16-17.  The ALJ listed and discussed, cursorily, the factors listed in <u>Polaski v. Heckler</u>, 739 F. 2d 1320 (8th Cir. 1984).  In doing so, the ALJ noted that the plaintiff's daily activities "are consistent with sedentary work" and described them.  He credited plaintiff's testimony that he cannot walk or stand for extended periods because doing so exacerbates his pain, although his hypothetical incorporated a stand/walk restriction of 1 ½ hours in an 8-hour day, 15 minutes more than plaintiff's testimony.  The ALJ concluded that his Residual Functional Capacity findings "accommodate" plaintiff's physical limitation.

The ALJ made credibility findings that plaintiff's subjective complaints of constant, severe pain and the "pain behavior he demonstrated at the hearing" were inconsistent with the objective medical records, plaintiff's lack of recent medical treatment,[5] and use of only non-prescription drugs to address his pain. He did not point to specific discrepancies as between the medical records and plaintiff's testimony, nor any specific inconsistencies between his daily activities and his subjective degree of pain.

> When making determinations regarding the credibility of a claimant's subjective allegations of pain, Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984) requires the administrative factfinder to examine such matters as: (1) the claimant's daily activities, (2) the duration, frequency and intensity of the pain, (3) dosage, effectiveness, and side effects of medication, (4) precipitating and aggravating factors, and (5) functional restrictions. Polaski, 739 F.2d at 1322. It is not enough that inconsistencies may be said to exist; the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in Polaski when making credibility determinations. Herbert v. Heckler, 783 F.2d 128, 131 (8th Cir.1986); Douthit v. Bowen, 821 F.2d 508 (8th Cir.1987). Absent such a clarification of the ALJ's determination, it cannot be said that substantial evidence supports the determination that appellant's daily activities are inconsistent with

---

[5] Plaintiff testified that he had not seen a physician for his musculoskeletal pain in the three or four years preceding the hearing, T. at 296, although he had seen a chiropractor weekly for an unstated period ending in January, 2004. T. 297 The ALJ found his failure to seek out treatment for his pain "strains credulity in the face of the pain behavior he demonstrated at the hearing." Implicit in this observation is the assumption that had the plaintiff really been suffering such pain as he described and "demonstrated," he would have gone to an emergency room for treatment, and conversely, since he did not go to an emergency room, he did not have disabling pain. Such an assumption is unsupported in the evidence. Plaintiff testified that the reason he did not go to an emergency room was that he could not afford the cost. He was not gainfully employed at the time of the hearing, and there is no evidence that any emergency room treatment would have been free of charge.

>her allegations of pain. Ricketts v. Secretary of
>H.H.S., 902 F.2d 661 (8th Cir.1990).

Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991).

So it is here. The findings of the ALJ state only that plaintiff's daily activities "are consistent with sedentary work." There is no mention of any reason why his daily activities are inconsistent with his reported degree of pain. In addition, there is no description of plaintiff's "pain behavior" during the hearing beyond that he "alternated sitting, standing, and walking. He limped and used a cane."[6] Thus, the ALJ's credibility determination is largely unexplained, and not supported by substantial evidence.

Given the critical part credibility played in this disability determination, another hearing must be held to clarify the record on the plaintiff's need to rest "for 45 minutes," and the credibility of that and his other testimony regarding pain. A judgment of remand will be entered.

---

[6] In Cline, the Court of Appeals commented further on this factor in rejecting an ALJ's rejecting a claimant's description of pain because of her behavior, or lack of it, during her hearing:
>"[T]he ALJ is not free to reject a claimant's credibility on account of the claimant's failure to sit and squirm during the hearing. Rheinhart v. Secretary of H.H.S., 733 F.2d 571, 573 (8th Cir. 1984). Pain/credibility determinations necessarily require, to a large extent, the quantification of unquantifiable, subjective sensations of pain, a difficult task which invites undue reliance on personal observation. Any system of administrative adjudication which would attach determinative weight to appearances would be fraught with the potential for manipulation because outward manifestations of pain can easily be contrived by a calculating claimant, or suppressed by a hardy claimant. In light of the ALJ's failure to undertake the appropriate Polaski analysis, it would appear that the ALJ gave inordinate weight to this consideration."

939 F.2d 560, 567-68.

IT THEREFORE HEREBY IS ORDERED:

1. Michael J. Astrue is substituted as defendant in accordance with Fed. R. Civ. P. 25(d)(1).

2. Judgment shall be entered for the plaintiff, remanding the matter to the Commissioner for further proceedings.

DATED May 14, 2007

BY THE COURT:

s/ *David L. Piester*
United States Magistrate Judge